Decree affirmed and appeal dismissed, at the costs of appellant.

---

# Appeal of Samuel L. Kauffman in Right of His Wife, Catharine Kauffman.

Where an estate consisted of $40,000 of which $7,000 was in cash and $33,000 in unconverted securities which the heirs agreed to take without conversion, and where the administrator has done nothing but make a few small disbursements and collect a few small claims, without litigation, $1,600 was held a sufficient compensation.

Where a son was indebted to his father's estate on notes more than six years due and refuses to plead the statute of limitations, an attaching creditor of the son will not be permitted to plead the statute for him.

Where a widow had agreed with the heirs to release to them her share of the personalty of her husband's estate, in consideration of $6,000 in cash and the occupancy of the real estate for life, the portion of the personalty released is not a part of the decedent's estate, but is a payment by the widow for her life estate in the realty.

(Argued May 19, 1887. Decided October 3, 1887.)

January Term, 1887, No. 406, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Lancaster County confirming the report of an auditor. Reversed.

The auditor, Charles Dennes, Esq., found facts as follows:

Adam Rockafield died July 18, 1885, intestate, leaving surviving him, a widow, Catharine Rockafield, and the following named children, to wit: Catharine Kauffman, wife of Samuel

L. Kauffman; Rachael Scott, wife of Francis M. Scott; Hetty Leaman, wife of —— Leaman; Emma Keech, wife of James B. Keech; A. J. Rockafield; Adam S. Rockafield, and three grandchildren.

The account presented, and received in evidence, which was confirmed nisi, June 21, 1886, by the orphans' court, showed a balance of $40,134.99 due the estate, and included the excess of the indebtedness of A. S. Rockafield over his share in this estate.

Exceptions were filed, by William R. Wilson, Esq., attorney for Rachael Scott, one of the heirs, July 16, 1886, in which A. F. Hostetter, attorney for Catharine Kauffman, one of the heirs, joined, to the credit of $2,000, as commissions of accountant, as exorbitant in amount."

In the inventory were included two promissory notes, one appraised at the sum of $1,100, and the other, with interest to October 1, 1885, at the sum of $2,725; the two notes, according to inventory, amount to the sum of $3,825.

The $1,100 note is dated April 15, 1869, payable one year after date, to Adam Rockafield, the decedent.

The other note for $2,000, on which interest is calculated, amounts to $2,725 as above stated, and is dated July 1, 1878, payable one year after date, to Adam Rockafield, the decedent.

To both of these notes, given by Adam S. Rockafield, a son and one of the heirs of Adam Rockafield, the decedent, Geo. Nauman, Esq., attorney for Robert McClure (an attaching creditor of Adam S. Rockafield), administrator of Dr. John Martin, deceased, pleads the statute of limitation.

Mr. Nauman offered in evidence a judgment of John Martin against Adam S. Rockafield (one of the heirs), to January term, 1870, No. 1245.

The judgment on which the attachment was issued was entered April 9, 1870.

A sci. fa. to revive the judgment was issued November 5, 1885, and on the same day the death of the plaintiff was suggested, and Robert S. McClure, his administrator, was substituted on the docket of the court of common pleas. The scire facias was returned "nihil." On November 19, 1885, an alias scire facias was issued and judgment thereon entered January 20, 1886, to December term, 1885, No. 42, for $774.76. Attachment *ad. lev. deb.* was issued October 6, 1885, against Adam

S. Rockafield, as defendant and A. J. Rockafield, administrator of Adam Rockafield, deceased, as garnishee.

In the case before us, the estate is perfectly solvent; and the attaching creditor, or his representative, is not a creditor of Adam Rockafield, deceased, but a creditor of Adam S. Rockafield, a son, and one of the distributees of the estate of said Adam Rockafield, deceased.

The maker of the two notes mentioned did not interpose the statute of limitations, nor anyone for him. On the contrary, he authorized his brother, A. J. Rockafield, to employ counsel for him, with instructions that he did not wish to plead the statute, in fairness to the other heirs; that he always understood that these sums were given to him as advancements by his father; that he was advanced to a greater amount than his share in the estate. Now as to advancements: the maker, so far as the auditor knows, does not and did not claim anything from his father's estate, because he has nothing to get, by reason of having received from his father the several amounts, or sums of money represented by these notes, as stated and acknowledged by himself. Taking all the circumstances and evidence in regard to the notes, the auditor is of opinion that the two above-mentioned notes, as well as the note for $1,400, dated September 7, 1883, and identified "C. D. No. 5," should be deducted from or set off against the share of A. S. Rockafield, the maker of the note, and so decides.

An agreement between all the heirs and widow of the deceased, dated October 2, 1885, stipulated among other things that the heirs leased to Catharine Rockafield, the widow, ten acres of land, more or less, etc., for the term of her natural life, from the time of her husband's death; and the widow releases all her right, title, and interest, in and to so much of her share of the personal estate (except what is therein conveyed to her) of her said husband, deceased, as exceeds the sum of $6,000, and upon the payment to her of the said sum of $6,000, distribution of the estate remaining to be made according to the intestate laws of the commonwealth of Pennsylvania, among the parties of the first part in the proportions to which they are entitled.

After considering the law as applicable to commissions in such cases, and all the circumstances connected with the administration of the estate, the auditor is of the opinion that the $2,000 commission charged is excessive; and the exception to this item

is sustained, and the commission fixed at the sum of $1,600 — which sum, the auditor is of opinion, is a fair and ample compensation under the circumstances.

The indebtedness of the defendant in the attachment to the estate being greater than the share coming to him from this fund, and hence no funds to which A. S. Rockafield is entitled are in the hands of A. J. Rockafield, the garnishee, nothing is awarded to the attaching creditor.

Exceptions filed to the auditor's report were partially sustained by the court in the following opinion, delivered by LIVINGSTON, P. J.

The exceptions may properly be divided into two classes:

(1) Those relating to the commissions of the accountant;

(2) Those relating to the distribution of the fund among the heirs, and especially with reference to the share of Adam S. Rockafield, a son, and the attachment issued against him.

As to the first, the account shows that the administrator charges himself with the whole amount of the inventory, and with moneys received, interest on investments, etc., since filing the inventory, in all ...................... $42,787 60
And takes credit only for payments made, expenses,

    commissions, etc. ...................... 2,652 61

Leaving the balance to distribute ............. $40,134 99

The administrator in his account has charged as commission $2,000, being less than 5 per cent.

In this case there were no trusts created by the will; the whole personal estate was to be collected and distributed, and the administrator gave bail and took upon himself the responsibility of the administration of the estate according to law; and he has so administered it that there has been nothing lost. A considerable portion of this personal estate was invested in judgments and mortgages by the decedent in his lifetime. Most of these investments were so judiciously made, so good and satisfactory, and the percentage of interest so advantageous, as to make them desirable to have and to hold as investments; and knowing this, and desiring to benefit the heirs, and increase the estate, by permitting the interest to run, the administrator had his "counsel write to the heirs, to see which of the securities they wanted to take as part of their shares, because it would increase the size of

the estate, by keeping the securities bearing interest," and he then collested all those which the heirs did not wish to take, some of which, amounting to $1,300, were not good; he succeeded in collecting them, however, and now, because he permitted them to take, as cash, investments already made for them, without any exertion on their part, safe investments, paying good interest, some of them desire to deprive him of the customary compensation, or commission, and wish the court to count the days, perhaps hours, the administrator was actually engaged in settling the estate, and let him be compensated in accordance therewith; and we are referred to Montgomery's Appeal, 86 Pa. 230, and cases of like character, in which trusts were created by will, in which the investments made by the testator were directed by him to remain, and not be collected by the executor in settling the estate, and on which the executor had charged commissions or compensation for collection, and on which the supreme court say he will be entitled to compensation when collected, under the provisions of the will, and that the anticipating of the compensation, which may result from future services, is not commendable.

And yet this rule does not seem to be an iron or inflexible rule, even in the supreme court, for in Davis's Appeal, 100 Pa. 201, decided since Montgomery's Appeal, the testator by his will provided that the principal of his estate should be and remain securely invested, and that all the interest and income thereof should be given to and equally divided between his four children and two grandchildren, etc.

The assets of the estate amounted to $28,202.67. The executor upon filing his account appeared to have in his possession a balance of $25,737, of which $25,000 remained unconverted, in the same securities left by the testator. The court below awarded the executor a commission of 5 per cent on this balance, and the supreme court says: "On the subject of commissions, we see no sufficient reason for interfering with the action of the auditing judge and the orphans' court."

But cases of this character are entirely different from the one now before the court. Here there are no trusts, no investments ordered to be made or kept; the estate was to be administered, and after paying debts, the balance to be paid over by the administrator to the heirs. The administrator has so managed the estate that not a dollar of the *corpus* has been lost, and the great

body of it has been bearing interest continuously, to the great advantage of the heirs; had he proceeded to collect, without giving them an opportunity of selecting such securities as they desired, as cash in the distribution, the interest would have ceased, the money been in bank, and they would not receive good securities bearing interest from the moment distribution is made. In other words, the securities which the administrator retained unconverted, he retained for the accommodation and benefit of the heirs desiring to take them.

It cannot be expected that an administrator will keep an account of every day, hour, and minute he is actually engaged in the business of settling an estate, so as to be paid so much per diem. The courts have said (Rhodes's Estate, 33 Phila. Leg. Int. 168) that not only the time, labor, and responsibility incurred in the settlement of an estate by an administrator, but the success also of his management is compensated. The rule fixing the compensation at 2½ per cent on real estate and 5 per cent on personal estate (which is the only rule fixed in Pennsylvania), should not be departed from except for good cause. Skinner's Estate, 4 Phila. 189.

The burden of proof that compensation should be less than custom has fixed is upon the exceptant. Watson's Estate, 6 Luzerne Legal Reg. 13.

In Eshleman's Appeal, 74 Pa. 42, the estate was large and the usual rule was adopted by the supreme court.

In Perkins's Appeal, 16 W. N. C. 125, the capital of the estate was about $22,000. The trustee held the fund about a year, without any further labor than collecting the income. In his account he claimed $100, for professional services rendered the estate before his appointment, about $225 (being 5 per cent) for collecting the income, and $1,500 as compensation for services as trustee, all of which were allowed by the auditor. Exceptions were taken, and the court below reduced the compensation of the trustee to 5 per cent on the amount of the estate and income. The supreme court said the court below erred in so doing, reversed the court below, and confirmed the report of the auditor.

We have found no case in which the court says that the 5 per cent for personal and 2½ per cent for real estate rule or custom is not a safe and proper general rule or custom for fixing compensation of executors or administrators. Those extraordinary

cases in which we find it departed from only fix the fact that it is not an inflexible rule or custom. We, therefore, are of opinion that the learned auditor erred in reducing, arbitrarily, and without sufficient proof by exceptants, the compensation of the administrator, and find that the exception to his so doing is sustained, which leaves the compensation as charged in the account, $2,000.86.

In this case, we think, the learned auditor has not erred in finding that the attaching creditor of Dr. A. S. Rockafield is not in a position to plead the statute of limitations against the claim owing by the debtor to the estate of his father—the debtor, Dr. Rockafield, being alive, acknowledging his indebtedness, and refusing to plead the statute himself.

In Kittera's Estate, 17 Pa. 422; Ritter's Appeal, 23 Pa. 96, and in kindred cases, the claimants were themselves creditors of the estates being distributed, direct, and as to their right to interpose the statute, there could scarcely be a question.

In Milne's Appeal, 99 Pa. 483, the share of A. J. Buckner, Jr., in the estate of A. J. Buckner, Sr., deceased, was attached by a creditor of A. J. Buckner, Jr. A. J. Buckner, Jr., was dead and could not, as Dr. A. J. Rockafield in the case before us does, acknowledge his indebtedness, and refuse to plead the statute as to the claim of the estate against him; and in that case his creditor was permitted to plead the statute.

Where a debtor is alive and acknowledges his indebtedness, and refuses to plead the statute, he cannot be compelled to plead the statute of limitations against one of his creditors for the benefit or advantage of another creditor. Nor can one of his creditors interpose the statute of limitations against another, where the debtor acknowledges his indebtedness and refuses so to do.

And, as the indebtedness of Dr. A. S. Rockafield to the estate is much greater than his distributive share thereof, there can be no part of his said distributive share awarded or applied to the payment of the attachment, issued by the creditor of Dr. Rockafield.

So careful are courts in regard to the rights of attaching creditors that they have allowed the name of a new party to be added to the writ of attachment, where no rights of third parties have supervened. Sullivan v. Langley, 128 Mass. 235.

The judgment upon which this writ of attachment was issued

being an undisputed, valid judgment, and being between the debtor and attaching creditor alone, no rights of third parties having supervened, or being in any wise prejudiced or injured; taking our view from the facts as presented in the case, and from the standpoint fixed by the cases we have above referred to, we are of opinion, and our judgment is, that the share or portion of the money Dr. A. S. Rockafield is to receive out of the moneys to be paid under the agreement between the widow and heirs of Adam Rockafield, is subject to and bound by the attachment issued against him by Dr. Martin (now Dr. Martin's executor), to October term, 1885, No. 42; and that the amount due on the judgment upon which said writ issued, together with the costs of the revival of said judgment and the costs of attachment, must be paid out of said share of Dr. A. S. Rockafield.

Thus, share of Dr. Rockafield..................... $985 22
Deduct sum claimed under attachment............ 857 59
_____
Leaving of said share the sum of ................. $127 63
to be paid by the administrator under said agreement to Dr. A. S. Rockafield.

Substituting the distribution we have thus made for the distribution made by the learned auditor, we dismiss the exceptions, and confirm the report absolutely.

(The court subsequently filed the following supplemental opinion to correct an error):

Now, April 28, 1886, the attention of the court having been called to an alleged error apparent on the face of the opinion and distribution filed, in the case by the court:

On inspection and examination, we find the general, or main features of the distribution to be correct. The share of each child, we found to be $3,684.73 2/7, and of each grandchild, $1,228.84; and up to this point the distribution is correct.

We inadvertently erred, however, in this: that after adding the indebtedness of Dr. A. S. Rockafield, to the sum for distribution, as if paid, $6,484.32, and then making distribution, we divided the share or dividend of Dr. A. S. Rockafield thus found, among the other children and grandchildren. This was a mistake, as his indebtedness was never paid.

That portion of our opinion as filed, with the distribution we made, commencing: "To each child's share, must be added one sixth of Dr. Rockafield's share, $614.12, and to each grand-

child's share one third of one sixth thereof, $204.70, making each child's full share $4,298.85, and each grandchild's share $1,432.94," is incorrect, and must be wholly stricken out, leaving each child's share $3,684.73 2/7, and each grandchild's share $1,228.84.

This will not affect the recapitulation in amount, or sum total, with the distribution thus corrected the *recapitulation will be:*

| | | |
|---|---|---|
| Widow's dower, or thirds | $12,896 | 56 |
| Shares of the six children | 22,108 | 39 5/7 |
| Shares of three grandchildren | 3,684 | 73 2/7 |
| Credit for administrator on Dr. Rockafield's indebtedness | 2,799 | 50 |
| | | |
| Fund for distribution | $41,489 | 19 |

The assignments of error specified the action of the court in not distributing the entire fund or balance in the administrator's account as the estate of Adam Rockafield; in finding that Dr. A. S. Rockafield had any interest in the estate of decedent; in finding that Dr. A. S. Rockafield had any interest, subject to attachment, in virtue of the agreement between the heirs and the widow, of second of October, 1885, in the sum of $6,896.56, or any other amount; in awarding to the estate of Dr. John Martin the sum of $857.59; in awarding to Dr. A. S. Rockafield the sum of $127.63; in substituting their own distribution for that of the auditor; and in allowing accountant $2,000 as commissions.

*Wm. R. Wilson* and *A. F. Hostelter,* for appellant.—The excess of Dr. Rockafield's share has not been collected, and the court allows the administrator credit for it. He is therefore not entitled to commissions on this amount. Bedell's Appeal, 85 Pa. 398.

Striking this out, the real debit is less than $40,000 and the commissions allowed a trifle more than 5 per cent.

This allowance, we claim, is greatly out of proportion to the amount earned.

This estate of $40,000 came into the administrator's hands exceptionally well invested in judgments, mortgages, and a few notes, and was much more easily administered than are most estates of its size. The heirs, immediately after it was inventoried, agreed, by correspondence with the administrator, to take

a large part of these securities in payment of their shares. Three fourths of the estate to-day is unconverted and standing in the securities which originally came into his hands and to be thus distributed in kind. With all this part of the estate the administrator has had no labor, except to collect and receive the annual interest on April 1. This the testimony shows was collected and received by his attorney, who has already been paid by the estate.

Considering the character of these securities, it will not be seriously contended that if the administrator had gone through the labor and responsibility of converting them and holding the cash he would be allowed more than 5 per cent. As it is, he did not have this labor and responsibility and cannot be paid for it. McCauseland's Appeal, 38 Pa. 470; Montgomery's Appeal, 86 Pa. 230; Stearly's Appeal, 38 Pa. 525; Re Harland, 5 Rawle, 323; Pusey v. Clemson, 9 Serg. & R. 209; Walker's Estate, 9 Serg. & R. 223; Davis's Appeal, 100 Pa. 201.

The effort of the attaching creditor to realize his judgment, which he holds against Dr. A. S. Rockafield, out of the estate of the decedent, cannot be sustained.

The auditor has found that the notes in question were, by the acknowledgments and admissions of Dr. Rockafield himself, as well as through his agent and counsel, both in court and out of court, subsisting indebtedness to his father's estate; and therefore a set-off to his share; and this finding (being affirmed by the court below) will not be disturbed, unless for manifest error. Roddy's Appeal, 99 Pa. 10.

And in this case all doubt should be put at rest, by the fact that Dr. Rockafield, by counsel, appeared before the auditor, and in court, and distinctly admits the indebtedness, and refuses to plead the statute of limitations. The attaching creditor must claim through Dr. Rockafield, or not at all. He can acquire no claim against the garnishee superior to what the debtor had. Riddle v. Etting, 32 Pa. 412; Strong v. Bass, 35 Pa. 333; Springle's Appeal, 29 Pa. 208; Myers v. Baltzell, 37 Pa. 491.

If, then, the attaching creditor stands in the same shoes as Dr. Rockafield, how can he recover? Kittera's Estate, 17 Pa. 422; Ritter's Appeal, 23 Pa. 96; Keen v. Kleckner, 42 Pa. 529.

The notes of Dr. A. S. Rockafield being a valid indebtedness due the estate, they will be set off against his distributive share, and must first be paid before he or the attaching creditor can take anything.

*John A. Coyle,* for A. J. Rockafield, appellee.—It is desired to add but a single citation of an authority to those contained in the opinion of the court.

In Whelen's Appeal, 70 Pa. 410, the entire estate passed into the hands of the executors in the shape of interest paying investments in stocks, etc. There was no change or conversion of assets; nothing required to be collected by suit. The actual duty performed was simply to pay to the legatees their respective portions of the securities (amounting in all to $163,000) after having held them a little over two months.

*George Nauman,* for Robert S. McClure, administrator, appellee.—Dr. A. S. Rockafield had given to his father three notes; one for $1,400, one for $1,100, and one for $2,000. The two latter notes were barred by the statute of limitations. At the audit the claim made by the other distributees, that these notes should be deducted from his share, was resisted by the attaching creditor; and that, on distribution, any creditor can avail himself of the statute against any claim which conflicts with his interest, is certainly settled in Ritter's Appeal, 23 Pa. 96; Kittera's Estate, 17 Pa. 422; and Milne's Appeal, 99 Pa. 483.

There is no such new promise in this case as will remove the bar of the statute. To take a case out of the operation of the statute, there must be an admission consistent with a promise to pay. Palmer v. Gillespie, 95 Pa. 340, 40 Am. Rep. 657; Montgomery v. Cunningham, 104 Pa. 349.

On the ground on which the court awarded the money to the attaching creditor, the argument is unanswerable.

October 6, 1885, the administrator of Dr. John Martin (having judgment against Dr. A. S. Rockafield) issued the attachment execution, and it was served on the same day. This attachment bound any money then in the hands of the garnishee, or which came into his hands subsequently. Sheetz v. Hobensack, 20 Pa. 412; Mahon v. Kunkle, 50 Pa. 216.

An attachment is a lien prior to a subsequent judgment. Straley's Appeal, 43 Pa. 89.

The administrator could have got judgment against Dr. Rockafield and attached all moneys in his own hands. Moyer v. Lobengeir, 4 Watts, 390, 28 Am. Dec. 723.

A garnishee has such rights, and such rights only, as exist at the service of the writ. Myers v. Baltzell, 37 Pa. 491.

OPINION BY MR. JUSTICE STERRETT:

The only specification of error in which there appears to be any merit is the seventh, in which the allowance of $2,000 commissions to the administrator is complained of as excessive.

In view of all the circumstances connected with the administration, we agree with the learned auditor that $1,600 is a liberal compensation for the services and responsibility of the administrator. That item is, therefore, reduced to that sum, and the difference, $400, added to the fund for distribution.

As to each of the questions involved in the remaining specifications, the opinion of the learned president of the orphans' court furnishes a satisfactory answer.

Decree reversed at the costs of appellee, and record remitted with instructions to distribute the fund in accordance with the foregoing opinion.